UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| **DAVID TABORDA** | : |
| | : DOCKET NO. 3:01CR162 (SRU) |
| V. | : DOCKET NO. 3:03CV2024(SRU) |
| | : |
| **UNITED STATES OF AMERICA** | : April 28, 2005 |

**GOVERNMENT'S RESPONSE TO PETITIONER
DAVID TABORDA'S MOTION PURSUANT TO
28 U.S.C. §2255**

The United States of America respectfully submits this motion in response to David Taborda's *pro se* petition filed pursuant to Title 28 U.S.C. § 2255 to vacate, set aside or correct his conviction. Taborda pleaded guilty to conspiring to possess with intent to distribute and to distribute more than five kilograms of cocaine, in violation of Title 21 U.S.C. § 846. He was sentenced principally to 120 months' imprisonment. Taborda's conviction was affirmed on direct appeal. See United States v. Taborda, Nos. 02-1580, 2003 WL 1913477 (2d Cir. April 17, 2003). Taborda now moves on collateral review to vacate his sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, his petition should be denied.

**I. Background**

On November 7, 2001, a federal grand jury returned a superseding indictment charging the defendant with the unlawful possession with the intent distribute ten kilograms of cocaine from Connecticut to Massachusetts in October 2000. The defendant was arrested on the Massachusetts Turnpike with co-defendant Jaime Mendez, and a search of their van resulted in the seizure of the cocaine.

1

Thereafter, a federal investigation developed the following facts. On October 26, 2000, the defendant met with co-conspirators Diego Arboleda, Luis Osorio and Jaime Mendez at General Electric ("GE") in Stamford, CT. GE was Arboleda's workplace. Osorio had agreed to purchase ten kilograms of cocaine from Arboleda and Diez for $25,000 per kilogram. At this meeting, the defendant and Osorio went with Arboleda to his locker at the GE facility. Arboleda opened his locker and removed a black duffel bag which contained ten kilograms of cocaine. Osorio separated the cocaine, placing three kilograms inside a black plastic garbage bag and then putting the garbage bag back inside the duffel bag with the remainder of the cocaine.

The defendant and Mendez then left GE in a minivan and proceeded towards Boston, Massachusetts. At approximately 9:45 p.m. that night, a Massachusetts State Trooper stopped the minivan for various vehicle violations. A subsequent search of the vehicle revealed the cocaine. The cocaine was found in separate bags of seven and three kilograms. The defendant and Mendez were then taken into custody by the Massachusetts State Police. The two were subsequently charged by the Massachusetts authorities.

As a result of an ongoing investigation conducted by the Drug Enforcement Administration, Bridgeport, Connecticut, the defendant was then indicted by a federal grand jury in Connecticut. The defendant was charged in Count One of the superseding indictment charging him with conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine. He was also charged in Count Two of the superseding indictment with knowingly possessing more than five kilograms of cocaine.

On June 3, 2002, pursuant to the terms of a plea agreement entered into between the defendant and federal government, the defendant pleaded guilty to Count One of the indictment,

charging him with a violation of Title 21 U.S.C. § 846, conspiracy to possess with intent to distribute and to distribute more than five kilograms of cocaine.

On September 17, 2002, the defendant was sentenced to the statutory minimum term of 120 months' imprisonment. The district court declined to accept the defendant's request for "safety valve" relief from the statutory minimum. On September 24, 2002, the defendant filed a timely notice of appeal. In his appeal, the defendant challenged the district court's decision not to grant the defendant "safety valve" relief. The Second Circuit rejected the defendant's argument and affirmed the district court. See United States v. Taborda, Nos. 02-1580, 2003 WL 1913477 (2d Cir. April 17, 2003).

In his present motion, the defendant raises one issue. The defendant claims that the police stop of the vehicle in which the defendant was riding on October 26, 2000, and the resulting search of the vehicle and seizure of the cocaine, was unconstitutional. The defendant alleges that the Massachusetts State Police had no lawful reason to stop the van and conduct a search of the interior van which lead to the recovery of the duffel bag which contained the cocaine. The defendant correctly notes that a motion to suppress the cocaine evidence was filed on January 17, 2002 by his counsel. No decision, however, was rendered on the motion as the defendant subsequently pleaded guilty to the offense.

This issue was raised by the defendant in Massachusetts Superior Court after the defendant and Mendez were arrested and charged by Massachusetts authorities. The defendant raised the same argument that the evidence should have been suppressed as it was unlawfully obtained by an impermissible search of the vehicle. After a hearing on May 10, 2001, Massachusetts Superior Court Judge Volterra denied the motion to suppress, finding that the stop

of the vehicle and the subsequent search and seizure were lawful, and no constitutional violations occurred. See Ruling Attached Hereto as Exhibit A.

## II. Discussion

### A. Legal standard

The Second Circuit has aptly summarized the principles governing resolution of claims raised in §2255 motions:

> [N]ot "every asserted error of law can be raised on a §2255 motion." Davis v. United States, 417 U.S. 333, 346 (1974). The grounds provided in section 2255 for collateral attack on a final judgment in a federal criminal case are narrowly limited, and it has "long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." United States v. Addonizio, 442 U.S. 178, 184 (1979). As a general rule, "relief is available under § 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Hardy v. United States, 878 F.2d 94, 97 (2d Cir.1989) (quoting Addonizio, 442 U.S. at 185 (quoting Hill v. United States, 368 U.S. 424, 428 (1962))).

Napoli v. United States, 32 F.3d 31, 35 (2d Cir.1994).

Generally, in order for a claim of error to be raised on collateral review, the claim must have been preserved at trial and on direct appeal. "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a habeas only if the defendant can first demonstrate either 'cause' or actual 'prejudice,' or that he is 'actually innocent.'" Bousley v. United States, 523 U.S. 614, 622 (1998).

For the reasons that follow, the defendant's petition for relief must be denied.

### B. The Defendant's Claims are Waived

The claims set forth in the defendant's 2255 motion have all been waived and he is barred from raising them now. A habeas petitioner must not have procedurally defaulted his claims by

failing to raise them at trial and on direct appeal. For a court to review procedurally defaulted claims, the petitioner must show both "cause" for the default of each claim and "prejudice" that resulted from the alleged violation. Ciak v. United States, 59 F.3d 296, 302 (2d Cir. 1995) (quoting Wainwright v. Sykes, 433 U.S. 72, 87 (1977)). A writ of habeas corpus will not be allowed to do service for an appeal. See Reed v. Farley, 512 U.S. 339, 354 (1994) ("Where the petitioner–whether a state or federal prisoner–failed properly to raise his claim on direct review, the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice from the alleged . . . violation.'") (quoting Wainwright, 433 U.S. at 84); Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993) (same). Thus, "[i]t is well established that where a petitioner does not bring a claim on direct appeal, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for the procedural default and actual prejudice resulting therefrom." Billy-Eko v. United States, 8 F.3d 111, 113-114 (2d Cir. 1993).

A petitioner can demonstrate cause by showing that the alleged claims are based on newly discovered evidence, United States v. Helmsley, 985 F.2d 1202, 1206 (2d Cir.1993), or on some other objective factor external to the defense, Murray v. Carrier, 477 U.S. 478, 488 (1986), that could not reasonably have been discovered before direct appeal. A petitioner can show prejudice by establishing that the alleged error worked to his actual and substantial disadvantage. United States v. Frady, 456 U.S. 152, 170 (1982).

The defendant has failed to show either cause or prejudice. The defendant has not provided any reason as to why the claim set forth was not raised on direct appeal. This claim is not based on newly discovered evidence. Further, this claim and the information surrounding the

claim was certainly available to the defendant at the time of the direct appeal as the issue was raised in a pretrial motion to suppress. See generally Hardy v. United States, 878 F.2d 94 (2d Cir. 1989). Further, the defendant essentially waived the claim when he entered his plea of guilty without pressing the issue. By entering into the plea, Taborda acknowledged his participation in the scheme and his understanding that 10 kilograms of cocaine were in the automobile. As such, the failure to pursue the claim in the district court, and then on direct appeal, demonstrates that a manifest injustice did not occur.

### C. The Vehicle Stop and Subsequent Search and Seizure

Even if the defendant's claim was not barred for the reasons previously set forth, the claim nevertheless still fails.[1] The vehicle stop was constitutional as the officers had probable cause to believe that a traffic violation occurred. Further, the defendant, while having standing to challenge the vehicle stop, does not have standing to challenge the constitutionality of the search and seizure of the vehicle.[2]

#### 1. The Vehicle Stop was Lawful

---

[1] As previously noted, the constitutionality of the vehicle stop and resulting search and seizure was raised and argued before Massachusetts Superior Court Judge Volterra on May 10, 2001 by way of a suppression motion filed by the defendant and co-defendant Mendez. Judge Volterra denied the defendant's motion finding that no constitutional violations occurred.

[2] The government acknowledges that the defendant does have standing to challenge the constitutionality of the vehicle stop. A passenger in a vehicle has standing to challenge a vehicle stop because "stopping an automobile and detaining its occupants constitute a seizure within the meaning of the Fourth . . . Amendment[] . . ." Muyet, 946 F.Supp. at 305 (quoting Delaware v. Prouse, 440 U.S. 648, 653 (U.S. 1979); see also United States v. Powell, 929 F.2d 1190 1195 (7th Cir. 1991) (noting the conclusion of many courts that passengers have standing to challenge vehicle stops).

The Supreme Court has held that a traffic stop is a limited seizure within meaning of the Fourth and Fourteenth Amendment. See␣Whren v. United States, 517 U.S. 806 (1996). As such, the vehicle stop must be justified by either probable cause or reasonable suspicion which is based on specific and articulable facts that the individual was engaged in unlawful activity. See Terry v. Ohio, 392 U.S. 1, 21 (1968). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren, 517 U.S. at 810; United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994) ("When an officer observes a traffic offense –however minor– he has probable cause to stop the driver of the vehicle").

In this case, it is apparent that the vehicle stop was reasonable. The van in which the defendant was riding was stopped after a Massachusetts State Police Officer witnessed the vehicle driving on the right side of the highway on the rumble strips in the breakdown lane and then drift back into the traveling lane. See State Supp. Hear. Tran. at 13-14. The State Police stopped the vehicle for failing to stay within the marked lanes of the road and for having beads hanging from rear view mirror. Id. Both of these offenses constitute traffic violations within the state of Massachusetts. As this observation provided the officer probable cause to believe that a traffic violation occurred, the stop was reasonable. Therefore, this stop was lawful and any challenge to the vehicle stop must be denied. See Muyet, 946 F.Supp. at 306 (probable cause established and stop found lawful where officer observed traffic violation where defendant was driving too quickly as it rounded a corner and the driver lost control causing the car to stop diagonally across two lanes of road).

>   2.   The Defendant Does Not Have Standing to Challenge the Search and Seizure

The defendant does not have standing to challenge the search and seizure of the vehicle.[3] The Supreme Court has held that absent an affirmative assertion of a property or possessory interest in the automobile or an interest in the property seized, a mere passenger in a car lacks standing to challenge a search of the vehicle. Rakas v. Illinois, 439 U.S. at 148-49; see also Muyet, 946, F.Supp. at 304 ("a mere passenger in a car lacks standing to challenge a search of the vehicle because he does not have a reasonable expectation of privacy in the automobile."); United States v. McKneely, 6 F.3d 1447, 1450 (10th 1993); United States v. Paulino, 850 F.2d 93, 97 (2d Cir. 1988).

Here, the defendant has failed to assert a property or possessory interest in the van. The defendant has not claimed that he owns the van, nor has he asserted an ownership interest in the van. Moreover, he has failed to assert an interest in any of the property seized. Absent a finding that such interests exist, the defendant lacks standing to challenge the search. See Rakas, 439 U.S. at 148. Therefore, the claim must fail.

---

[3] The government notes that if the initial stop was illegal, the evidence seized in the subsequent search would be subject to exclusion as fruit of the poisonous tree. See United States v. Kimball, 25 F.3d 1, 4, 5-6 (1st Cir. 1994); United States v. McKneely, 6 F.3d 1447, 1450 (10th Cir. 1993); Muyet, 946 F.Supp. at 305. However, in this instance the stop was lawful, therefore the evidence is not subject to exclusion. See id.

### III.  Conclusion

For the forgoing reasons, the defendant' motion to vacate his sentence should be denied.

                                                   Respectfully submitted,

                                                  KEVIN J. O'CONNOR
                                                  UNITED STATES ATTORNEY

                                                  ROBERT M. APPLETON
                                                  ASSISTANT UNITED STATES ATTORNEY
                                                  915 Lafayette Boulevard
                                                  Bridgeport, Ct 06604
                                                  Federal Bar #Ct 05112
                                                  203-696-3000

## Certificate of Service

_____This is to certify that a copy of the above has been mailed to David Taborda, Prisoner ID 14495-014, FMC Devens, Unit H-B, Box 879, Ayer, MA  01432.

_____
Robert M. Appleton
Assistant U.S. Attorney